DOUBLEWAL CORPORATION ET AL. *v.*
BARBARA L. TOFFOLON ET AL.

WHITE OAK TRANSPORTATION CORPORATION ET AL.
*v.* BARBARA L. TOFFOLON ET AL.
(12469)
(12470)

PETERS, C. J., PARSKEY, SHEA, DANNEHY and SCHALLER, Js.

Argued January 16—decision released March 5, 1985

*Francis J. Brady,* for the appellants (plaintiffs Roger L. Toffolon and Marc R. Toffolon).

*Steven R. Humphrey,* with whom were *Janet C. Hall, James H. Carter* and, on the brief, *Lori F. Damrosch,* for the appellees (defendants).

PETERS, C. J. The dispositive issue on these appeals is whether the orders issued by the trial court in response to the plaintiffs' applications for temporary injunctions constitute final judgments that are ripe for appellate review. Because we conclude that they are not final judgments, we dismiss the appeals. General Statutes § 52-263; Practice Book § 3000.

The present litigation arises out of disputes concerning the control and management of several interrelated family corporations. In the first case, the plaintiffs are the Doublewal Corporation and Roger L. Toffolon, its president and treasurer. In the second case, the plaintiffs are the White Oak Transportation Corporation, Roger L. Toffolon, its vice-president and secretary, and Marc R. Toffolon, one of its directors. The complaints in both cases accuse the defendants, Barbara Toffolon, John E. Toffolon, Jr., and Penley Toffolon, of wrongful interference with the corporations' duly authorized officers by the improper call of shareholders' and directors' meetings, the improper election of corporate directors and other conduct disruptive of the corporations' business activities. The plaintiffs sought injunctive and declaratory relief, and urged that the corporations be dissolved. Throughout the litigation, the two cases have been tried together.

A brief factual recital is helpful to an understanding of the procedural issues that we must resolve. The plaintiff corporations are two of seven related family corporations that were jointly operated by John E. Toffolon, Sr., and his brother, the plaintiff Roger L. Toffolon, until John Toffolon, Sr., died on February 21, 1982. John Toffolon, Sr., was survived by his wife, Barbara Toffolon, who became the executrix of his estate, by his son, John, Jr., and by his daughter, Penley. Five of the corporations had buy-sell agreements allowing the surviving brother to operate and control the corporations, but the two corporations involved in the present litigation did not.

After the death of John E. Toffolon, Sr., Roger L. Toffolon took exclusive control of the plaintiff corporations. Running them as if they were his sole proprietorships, he held no directors' meetings, released no fiscal information, and rebuffed the efforts of John E. Toffolon, Sr.'s executrix and heirs to participate in their management.

Faced with Roger L. Toffolon's intransigence, Barbara Toffolon, as executrix of the estate of John E. Toffolon, Sr., asked Roger Toffolon to call meetings of the shareholders of the plaintiff corporations. When he did not do so, she herself sent out notices calling for meetings to be held, not in Plainville, Connecticut, where the corporations had their principal place of business, but in New York City, at the offices of her attorneys.[1] Although Roger L. Toffolon received the notices, he did not attend. In his absence, meetings were held, as noticed, to elect new officers and directors for both corporations.

---

[1] The Stock Corporation Act, General Statutes § 33-326 (a), provides: "Meetings of shareholders shall be held at such place, either within or without this state, as may be designated by or determined in the manner provided in the bylaws, or, if not so designated or determined, at the principal office of the corporation in this state."

Since Roger Toffolon did not acquiesce in the actions taken at the New York meetings, the plaintiff corporations became subject to the conflicting instructions of management by their "Connecticut boards" and their "New York boards." It was to resolve these conflicts that the present litigation was instituted.

When the plaintiffs filed their complaints, they simultaneously filed applications for ex parte restraining orders and for temporary injunctions in each case. The trial court, *Barall, J.,* immediately issued the requested temporary restraining orders prohibiting the defendants (the "New York boards") from holding themselves out as directors and officers of the corporations. A hearing on the requested temporary injunctions was held several months later, at a time when the pleadings were not yet closed;[2] see *Home Oil Co.* v. *Todd,* 195 Conn. 333, 342, 487 A.2d 1095 (1985); and no pretrial discovery had taken place. The trial court, *Ripley, J.,* denied the plaintiffs' applications for injunctive relief in a memorandum of decision filed February 15, 1984.

In its memorandum of decision, designated by the trial court as addressing the plaintiffs' "applications for temporary injunctions," the court made several

---

[2] The sequence of the pleadings is as follows:

(1) plaintiffs' original complaints, August 2, 1983;

(2) plaintiffs' applications for temporary restraining orders, August 2, 1983;

(3) plaintiffs' applications for temporary injunctions, August 2, 1983;

(4) plaintiffs' amended complaints, September 3, 1983;

(5) defendants' answers to the amended complaints, including special defenses and counterclaims, November 8, 1983;

(6) plaintiffs' answers to the defendants' special defenses and counterclaims, February 28, 1984.

The plaintiffs' replies to the defendants' special defenses and counterclaims, which were filed after the hearings on October 24 and October 31, 1983, relating to the applications for temporary injunctions, closed the pleadings. See Practice Book §§ 112, 171; *Breen* v. *Phelps,* 186 Conn. 86, 88, 439 A.2d 1066 (1982); *Krupa* v. *Farmington River Power Co.,* 147 Conn. 153, 155, 157 A.2d 914 (1959), cert denied, 364 U.S. 506, 81 S. Ct. 281, 5 L. Ed. 2d 258 (1960); see also Practice Book § 173.

determinations. The court validated the actions of the "New York boards," finding expressly that "Barbara Toffolon was authorized to call for a meeting, the location was in accord with the by-laws, and further . . . as executrix of the estate of John Toffolon, she was entitled to vote the shares as she did, together with others of her persuasion, to elect the officers and directors as reported by the minutes of those two meetings." On this basis, the court ruled that "the application for a temporary and permanent injunction is denied." The court declined to rule, for the time being, either on the plaintiffs' claims that the corporations be dissolved and wound up, or on the defendants' applications, in their counterclaims, that the corporations be placed in the hands of a receiver.

The trial court issued its orders on the applications for temporary injunctions in the form of judgments that recited that the actions taken by the "New York boards" were valid and legal, but that the claims for winding up and dissolution were premature. The judgments then stated, in each case, "that a permanent injunction be denied." When the plaintiffs took appeals from these judgments, the trial court denied postjudgment motions by the defendants seeking to lift the stays that normally attend appellate proceedings,[3] thus leaving the "Connecticut boards" in control during the pendency of the appeals.

In our review of these appeals, we must first decide whether the trial court's orders constituted final judgments, since we ordinarily lack the jurisdiction to hear interlocutory appeals.[4] General Statutes § 52-263; Prac-

---

[3] The defendants filed in each case a motion for "order enforcing and clarifying court's decision" which the plaintiffs resisted, relying upon the provisions of Practice Book § 3065.

[4] When the plaintiffs' appeals were first filed in this court, the defendants filed motions for dismissal on jurisdictional grounds which we denied without prejudice to their renewal at this time.

tice Book § 3000. Neither side disputes the general principle that, in the absence of statutory exceptions that are not presently relevant,[5] decisions either granting or denying temporary injunctions are not final judgments and are therefore not immediately appealable. *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 88, 376 A.2d 1080 (1977); *Olcott* v. *Pendleton*, 128 Conn. 292, 295, 22 A.2d 633 (1941). The question before us is whether the form or the content of the trial court's orders in these cases removes these appeals from the general rule.

The plaintiffs advance several arguments in support of their position that these appeals are properly here. In broad outline, these arguments break down into two components. First, the plaintiffs argue that the trial court, without regard to its orders denying them injunctive relief, rendered declaratory judgments finally adjudicating the status of the corporations' directors and officers pursuant to General Statutes § 33-315 (a). The trial court has therefore finally disposed of all of the issues that pertain to counts one, two, three, four, six and seven of their complaints, and the plaintiffs are entitled to appeal these adverse rulings pursuant to Practice Book § 3001.[6] Appeals on these counts are unaffected, according to the plaintiffs, by the fact that other issues with respect to other counts of their com-

[5] Immediate review of temporary injunctions is authorized for appeals arising out of labor disputes; General Statutes § 31-118; or for appeals involving matters of "substantial public interest and in which delay may work a substantial injustice." General Statutes § 52-265a.

[6] "[Practice Book] § 3001. APPEAL FROM JUDGMENT DISPOSING OF PART OF ISSUES

"A judgment disposing of certain of the issues between the parties or of part or all of the issues between some of them in such a manner as to be final but not terminating the litigation may be treated as a final judgment for the purpose of an appeal by the party or parties against whom the judgment is rendered, notwithstanding that the cause remains undisposed of on other issues or as to other parties; but the party or parties may, at their option, reserve their appeal until the final judgment is rendered

plaints are as yet unresolved.[7] Second, the plaintiffs argue that the trial court's orders expressly encompassed the denial in each case of a permanent as well as a temporary injunction, and thus were structured by the trial court as final judgments that are immediately appealable. In support of this position, the plaintiffs point to the trial court's postjudgment orders as indicating that the trial court intended to enter judgments that were final and appealable.

Although the plaintiffs' arguments might be persuasive under other circumstances, they cannot prevail here. The difficulty with the plaintiffs' position is twofold: the state of the pleadings with respect to the plaintiffs' claims under General Statutes § 33-315 (a) and the announced scope of the hearings for injunctive relief.

The proposition that the pleadings frame the issues before a trial court is well established in our caselaw. See 1 Stephenson, Conn. Civ. Proc. (2d Ed. 1970) § 75. In order to have the right to adjudicate, a trial court must have, "[b]esides jurisdiction of the person of the defendant and of the general subject-matter of the action . . . jurisdiction of the precise question which its judgment assumes to decide, or of the particular remedy or relief which it assumes to grant." 1 Black, Judgments (2d Ed. 1902) § 242, quoted in *New Haven Sand Blast Co.* v. *Dreisbach,* 104 Conn. 322, 329–30, 133 A. 99 (1926); *Case* v. *Bush,* 93 Conn. 550, 552–53, 106 A. 822 (1919). "The ultimate basis upon which rests the principle that a judgment must ordinarily be restricted to issues reasonably within the scope of the

which disposes of the cause for all purposes and as respects all parties; provided, in such a case, that notice of appeal shall be given within twenty days after issuance of notice of the rendition of the judgment disposing of part of the issues."

[7] See *Burgess* v. *Vanguard Ins. Co.,* 192 Conn. 124, 125 n.1, 470 A.2d 244 (1984); *Breen* v. *Phelps,* 186 Conn. 86, 89 n.4, 439 A.2d 1066 (1982).

pleadings is that, as to other issues, the adversary party has never been properly brought before the court and hence the court lacks jurisdiction to determine them. . . . That which is lacking is, however, jurisdiction over the party and may be waived. . . . Hence it follows that the parties may, by consent, enlarge the scope of the litigation to include issues not raised in the pleadings." (Citations omitted.) *Spitz* v. *Abrams,* 128 Conn. 121, 123, 20 A.2d 616 (1941); see also 1 Stephenson, Conn. Civ. Proc. (2d Ed. 1970) § 99.

In the cases before us, the plaintiffs' amended complaints did in fact raise statutory claims under General Statutes § 33-315 (a) and did in fact seek permanent declaratory and injunctive relief. We must therefore determine whether the trial court had the authority to rule on these claims when the court file showed that the pleadings were not closed and the court's proceedings were in response to the plaintiffs' applications for temporary injunctions.[8]

The fact that the pleadings were not closed restricts the authority of the trial court to render permanent judgments on pending claims. Our rules of practice expressly compel this result in the case of motions for summary judgment, which cannot be filed until "the pleadings are closed as between the parties to that motion." Practice Book § 379. It is entirely logical to apply the same principle to final judgments purporting to adjudicate claims for declaratory and injunctive relief. For declaratory judgments, it is a prerequisite that "there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of

---

[8] With respect to the pleadings, the record is clear that the hearings on the show cause orders for temporary injunctive relief, which were held on October 24 and 31, 1983, occurred at a time when the court file contained only the plaintiffs' complaints. By the time the trial court filed its memorandum of decision on February 15, 1984, the court file contained the defendants' answers, special defenses and counterclaims, but no answer by the plaintiffs to the defendants' affirmative claims. See footnote 2, supra.

legal relations which requires settlement between the parties." Practice Book § 390 (b). For injunctions, it is essential to establish not only a violation of the rights of the moving party but also that " 'such a violation . . . is, or will be, attended with actual or serious damage.' " *Simmons* v. *Budds,* 165 Conn. 507, 515, 338 A.2d 479 (1973), cert. denied, 416 U.S. 940, 94 S. Ct. 1943, 40 L. Ed. 2d 291 (1974). Both remedies require the exercise of discretion by the trial court in light of the totality of the relevant circumstances. *England* v. *Coventry,* 183 Conn. 362, 365, 439 A.2d 372 (1981) (declaratory judgment); *Berin* v. *Olson,* 183 Conn. 337, 340, 343, 439 A.2d 357 (1981) (injunction); *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 721, 427 A.2d 866 (1980) (declaratory judgment); *Waterbury Teachers Assn.* v. *Civil Service Commission,* 178 Conn. 573, 578, 424 A.2d 271 (1979) (injunction); *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 356, 365 A.2d 1093 (1976) (injunction). None of these determinations can properly be made while the pleadings are still open. See *Cavalli* v. *McMahon,* 174 Conn. 212, 215, 384 A.2d 374 (1978); cf. *Satmary* v. *Pollitt,* 162 Conn. 629, 295 A.2d 565 (1972).

Our conclusion that the proceedings at trial were not yet at the stage where final judgments were warranted is reenforced by the absence of any indication during the hearing before *Ripley, J.,* that the parties were presenting evidence with an eye to permanent rulings. It is not uncommon for a hearing on a temporary injunction to be converted, with the consent of the parties, to a hearing on a permanent injunction. See *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 248, 440 A.2d 310 (1982). The plaintiffs have, however, pointed to no evidence that the parties in these cases agreed to such a transformation and the transcript contains references only to a hearing on a

temporary injunction. A trial court may not sua sponte transform applications that request temporary injunctions into proceedings on the merits of issuance or denial of permanent injunctions.

In light of the state of the pleadings and the announced scope of the trial court's hearing, we conclude that the trial court was in error in denominating its orders as judgments purporting finally to deny the plaintiffs' claims for either declaratory or permanent injunctive relief. We shall therefore treat its actions as that which they validly could be: pendente lite orders denying the plaintiffs' applications for temporary injunctions. In arriving at its decision that such injunctions were inappropriate, the trial court correctly conducted a preliminary inquiry into the corporate governance dispute that it would ultimately be called upon to decide definitively. This is precisely the type of inquiry which is inherently interlocutory and therefore not ripe for appellate review. Like other appeals from temporary injunctions, these appeals must be dismissed until the plaintiffs' claims have been finally adjudicated.

The appeals are dismissed.

In this opinion the other judges concurred.