[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO AMEND
The plaintiff seeks to file a "Third Amended Complaint[1]
and the defendants object. The proposed amendment relates to only the Collierville and Thompson Road, Syracuse (Syracuse) sites.
The April 22, 1994 complaint in regard to Syracuse reads as follows:
Carrier Plant/Dewitt Landfill
Syracuse, New York
201. Carrier owns a site on Thompson Road in Syracuse, New York which has been designated by the New York State Department of Environmental Conservation (the "NYDEC") as a potentially hazardous waste site. Although the Site has most recently been used for disposal of heavy fill and construction debris, an Executive Summary prepared by the EPA after a visit to the site on or about May 4, 1983 states that there may have been past chemical dumping at the Site. Hazardous waste including barium, chromium, lead, halogens, TCE, trichloroethane, and transdichloroethene may have been disposed of at the Site.
202. On or about December 6, 1983, the NYDEC notified Carrier that it is a potentially responsible party in connection with CT Page 6551 contamination at the Site and made a demand for cleanup costs under Section 107 of CERCLA. As of February 1988, the NYDEC removed the Dewitt Landfill from the New York State list of hazardous waste sites.
203. Carrier also owns and operates a plant located on Thompson Road which is the site of at least six spills. On or about February 16, 1985, black waste material from an arc welding operation was discharged into a drain.
204. On or about October 16, 1985, a diesel oil spill was discovered during excavation of a pit. The diesel oil spill was reported to the EPA and the NYDEC.
205. In March, 1986, TCE groundwater contamination was found in an area behind a TCE storage tank. Possible groundwater contamination was reported to the EPA.
206. On or about May 14, 1986, gasoline was found floating on surface water during removal of an underground gasoline storage tank. The gasoline discharge was reported to the NYDEC. Carrier has excavated and disposed of the contaminated soil.
207. In August 1986, a gasoline discharge was discovered during removal of an underground gasoline storage tank. Carrier reported the gasoline discharge to the NYDEC.
208. Chromium, oil and grease and TCE have been found in the area of art acid and base storage tank. Carrier has closed this area of the plant. Carrier has informed the NYDEC of the contamination.
As set out Syracuse refers to two sites.
The proposed amendment in regard to Syracuse reads as follows:
Carrier Plan/Dewitt Landfill
Syracuse, New York
201. Carrier owns a site located on Thompson Road in Syracuse, New York (the "Syracuse Site").
202. A former landfill, known as the Dewitt Landfill, located CT Page 6552 on the Syracuse Site, has been designated by the New York State Department of environmental Conservation ("NYDEC") as a potentially hazardous waste site. Although the Dewitt Landfill has most recently been used for disposal of heavy fill and construction debris, an Executive Summary prepared by the EPA after a visit to the Dewitt Landfill on or about May 4, 1983 states that there may have been past chemical dumping at the Dewitt Landfill. Hazardous waste including barium, chromium, lead, halogens, TCE, trichloroethane, and transdichloroethene may have been disposed of at the Dewitt Landfill.
203. On or about December 6, 1983, the NYEC notified Carrier that it is a potentially responsible party in connection with contamination at the Dewitt Landfill and made a demand for cleanup costs under Section 107 of CERCLA. As of February 1988, the NYDEC removed the Dewitt Landfill from the New York State list of hazardous waste sites.
204. As a result of an environmental investigation, Carrier discovered the presence of TCE in the soil and groundwater at the Syracuse Site. Spills which caused or contributed to the presence of TCE in the soil and groundwater at the Syracuse Site occurred between 1978 and 1986.
205. In the summer of 1979, a spill of up to 3,000 gallons of TCE occurred during the cleaning of a hot vapor degreaser located in Building TR-2 at the Syracuse Site. As part of the cleaning process, TCE from the hot vapor degreaser was to be pumped to two holding tanks in Building TR-2 for storage during that process. The spill occurred when the pipe leading from the hot vapor degreaser to one of the holding tanks inadvertently was not switched to the other holding tank after the first tank was filled to capacity. As a result, TCE flowed out of the first holding tank and spilled onto the floor of Building TR-2. Carrier personnel attempted to clean up the spill, but only approximately 250 to 300 gallons of the spilled TCE was recovered during cleanup. Some of the TCE which was not recovered drained into the storm drain connected to the storm sewer system at the Syracuse Site, and otherwise entered the soil and groundwater.
206. On August 22, 1983, a spill of TCE occurred during the delivery of a tanker truck load of TCE to the bulk storage tank at Building TR-2B. The spill occurred when the tanker driver "cracked" the hose which connected the tanker truck to the bulk storage tank in order to eliminate a vapor lock which had CT Page 6553 developed in the hose. As a result, TCE flowed out of the hose and onto the area outside the TR-2B receiving dock. Some of the spilled TCE drained into a storm drain connected to the storm sewer system at the Syracuse Site, and into a ditch located alongside Thompson Road. Carrier's maintenance personnel from Building TR-6 were involved in the cleanup of the spill, but most of the TCE was not recovered.
207. Spills of TCE or materials containing TCE, including a spill on May 22, 1984, occurred between 1978 and 1986 in the vicinity of four underground storage tanks located in an area north of Building TR-6 (the "TR-6 Tanks"). Spills around the TR-6 tanks caused or contributed to the TCE soil and groundwater contamination at the Syracuse Site. On May 22, 1984, oil and coolant was spilled near the TR-6 Tanks. The spill occurred approximately 10 feet from a storm drain connected to the storm sewer system at the Syracuse Site. Spilled coolant may have contained TCE.
208. Each of the spills alleged above has caused property damage during each and every, policy period from the date of the spill until at least 1985.
FINDINGS AND RULINGS
I. The court has previously ruled in regard to Collierville.
II. Syracuse
The April 1994 complaint in #203 speaks of "at least six spills at Syracuse. The six are set out in paragraphs 203-208 and they are "black waste material from an arc welding operation . . . discharged into a drain"; "a diesel oil spill"; "TCE . . . contamination . . . found in an area behind a TCE . . . tank"; "gasoline was found floating on surface water"; "gasoline discharge was found during removal of an underground gasoline storage tank":, and "[c}chromium, oil and grease and TCE have been found in the area of an acid and base storage tank".
The earliest date for those six spills is February 16, 1985. Of course, the last "spill" listed does not have a date. In the latest amendment, paragraph 204, the claims go back to 1978 but in detailing those spills the earliest date is in "the summer of 1979" in a building (TR-2) (Paragraph 205). Nothing factually resembling that 1979 spill is alleged in the April 1994 CT Page 6554 complaint.
The next spill alleged is on August 22, 1983 from a tanker truck hose and onto the ground. There is nothing approximating that date or mentioning a tanker truck in the April 1994 complaint.
The next spills alleged in regard to TCE are "between 1978 and 1986"[2], including May 22, 1984. In the April 1994 complaint there are general allegations of finding TCE in paragraphs 205 and 208, but not of spilling it.
In the April 1994 complaint the plaintiff in Appendix A lists all of the policies under which it claims. For the defendant here it lists the following:
 63-005-080 10/01/78-10/01/79 63-007-162 10/01/80-10/01/81 63-006-109 10/01/79-10/01/80 63003750 11/01/77-11/01/78 63005135 11/01/78-11/01/79
The last policy expired on October 1, 1981. In that complaint none of the Syracuse spills or damages were within the policy period of any of defendant's policies. Thus defendant had no reason to be involved in discovery in regard to the Syracuse site. The proposed complaint changes all that. Under these new allegations defendant is for the first time liable for Syracuse.
This action was brought in 1988. The plaintiff has filed a total of four complaints to date and now wants to file another. This court has conducted extensive discovery in this matter for over four years.
It is true that snippets of opinions, charges, claims and facts about Syracuse have bubbled up from the miasma of discovery but until now none were put in a complaint. A plaintiff cannot prevail unless he proves facts alleged in his complaint.Doublewal Corporation v. Toffolon, 195 Conn. 384, 390-91.
We are a fact pleading state. P.B. §§ 108 and 131. Paragraphs 205 and 206 generally comply with that rule but paragraph 207 speaks of spills of TCE of materials containing TCE . . . between 1978 and 1986." Not only is there no date for those spills, save one, but no identification of the material CT Page 6555 spilled i.e. whether the spill was straight TCE or only some kind of material containing TCE. We are not even told the number of spills. The paragraph does give us a date of May 22, 1984 for at least one spill but then goes on to say that on that date "oil and coolant was spilled near the TR-6 tanks." We are not told if they contain TCE.
It is true that this court has broad discretion to allow amendments to pleadings before, during and even after trial in order to conform to the proof under certain circumstances.Gionfriddo vs. Carter-Howe Development Corporation, 27 Conn. App. 706,712. After all this time to allow this amendment which would produce additional discovery would result in delay and would be unfair to defendant. Farrell v. St. Vincent's Hospital, 203 Conn. 554,561-562.
The plaintiff not only could have discovered its new claims earlier, it did, according to its claims in its Reply Brief of February 7, 1995, with exhibits. That does not show diligence.Multi-Service Contractors, Inc. v. Vernon, 193 Conn. 446,452-453.
Request to amend is denied.
O'Neill, J.