CHARLES GATTONI ET AL. *v.* JOHN
ZACCARO ET AL.
(AC 18230)

O'Connell, C. J., and Lavery and Shea, Js.

Argued November 6, 1998—officially released March 16, 1999

*Robert K. Walsh*, for the appellants (plaintiffs).

*James A. Wade*, with whom was *Nathan A. Olin*, for the appellees (defendants).

*Opinion*

SHEA, J. The plaintiffs, Charles Gattoni and North Stonington Associates, Inc. (NSA), a Connecticut corporation, appeal from the judgment of the trial court ordering them to restore title to certain real property to the

defendant North Stonington Development Associates (NSDA), a Connecticut limited liability company. The plaintiff Gattoni also appeals from a subsequent judgment finding him in contempt and imposing sanctions for his noncompliance with the previous order concerning the return of the land to NSDA. We conclude that the trial court properly issued the injunction, but that the injunction must be treated as temporary, intended to restore the status quo ante litem, rather than permanent, because the court had no jurisdiction to issue a permanent injunction before the pleadings were closed. We reverse the judgment of contempt, however, because the court failed to hold a hearing on the defendants' motion for contempt before rendering judgment thereon.

In 1992, Charles Gattoni and John Zaccaro orally agreed to construct and operate a 400 room hotel and convention center in North Stonington, near the Foxwoods Casino. Zaccaro was to provide the funding and Gattoni was to obtain all the necessary zone changes and approvals for the project. Zaccaro paid the purchase price of $684,000 for the two parcels of land to be used for the hotel.[1] After several intervening transfers, the title to both parcels was acquired by NSDA, in which Zaccaro held a 51 percent interest and A & C Realty Trust, of which Gattoni was a trustee, held the minority interest.

On August 28, 1996, Zaccaro told Gattoni that he was not satisfied with the work Gattoni had done in developing the land owned by NSDA for the hotel and discharged him as a manager of the project. Later, Zaccaro informed Gattoni that his interest in NSDA was being significantly reduced. On September 9, 1996, Gattoni, purporting to be a managing member of NSDA,

---

[1] Zaccaro also paid an additional $30,000 to acquire the interest of the holder of options on the two properties.

executed a quitclaim deed conveying NSDA's principal asset, the land to be used for the proposed hotel, to the plaintiff NSA, a corporation in which Gattoni owned 50 percent of the shares. Gattoni claimed that he took this action because he feared that Zaccaro would transfer the land to some other entity in which A & C Realty Trust held no interest. The deed from NSDA to NSA was not recorded until May 27, 1997, and no conveyance tax was paid with respect to the transfer.

By a complaint dated May 27, 1997, the plaintiffs commenced this action and filed a lis pendens on the land records concerning the land deeded to NSA.[2] The complaint alleged that the defendant Zaccaro had breached his agreement with Gattoni concerning the purchase and development of the land transferred to NSA by discharging Gattoni and by attempting to terminate Gattoni's interest in NSDA. The plaintiffs sought a judgment determining the rights of the parties to the land held by NSA and settling title thereto.

The defendants filed no answer to the complaint but responded by filing a "verified motion for injunction." The motion sought to compel Gattoni and NSA to return to NSDA the land then held in the name of NSA. The defendants alleged that Gattoni had no authority to execute the deed granting the land to NSA. The defendants claimed that they had no adequate remedy at law and that, because of Gattoni's actions, they were unable to proceed with the construction of the hotel and conference center as planned and risked losing their substantial investment.

Prior to commencement of the hearing on the defendants' motion for an injunction, the plaintiffs filed a motion to withdraw the action. They claimed a right to withdraw without the trial court's permission pursuant

---

[2] The lis pendens was removed in a prior court proceeding.

to General Statutes § 52-80.[3] Because there was a prior proceeding involving removal of the lis pendens filed by the plaintiffs, the court questioned the applicability of that statute, but, nevertheless, granted the plaintiffs' alternative motion for permission to withdraw the action.

The trial court heard the defendants' motion for an injunction and determined that the only issue to be resolved was whether Gattoni was authorized to execute the deed on behalf of NSDA transferring the land to NSA. After the presentation of evidence by the parties, the court concluded that Gattoni lacked authority to execute that deed and had improperly converted the property. The court ordered that the property be returned to NSDA immediately so that the defendants would not suffer further financial loss. A motion filed by the plaintiffs to stay the execution of the judgment was denied because of the hardship that a delay in proceeding with the project would impose on the defendants. This court dismissed a motion for review filed by the plaintiffs on procedural grounds.

On March 19, 1998, the defendants filed a motion for contempt and sanctions against Gattoni for his failure to obey the order issued on March 3, 1998, to return the land he had wrongfully conveyed to NSA. In a memorandum of decision filed on March 30, 1998, the court, without holding a hearing on the motion, found that

---

[3] General Statutes § 52-80 provides: "If the plaintiff, in any action returned to court and entered in the docket, does not, on or before the opening of the court on the second day thereof, appear by himself or attorney to prosecute such action, he shall be nonsuited, in which case the defendant, if he appears, shall recover costs from the plaintiff. The plaintiff may withdraw any action so returned to and entered in the docket of any court, before the commencement of a hearing on the merits thereof. After the commencement of a hearing on an issue of fact in any such action, the plaintiff may withdraw such action, or any other party thereto may withdraw any cross complaint or counterclaim filed therein by him, only by leave of court for cause shown."

Gattoni had failed to obey the mandatory injunction that was issued and, therefore, concluded that he was in contempt of court. The court ordered that he pay $250 per day for each day he refused to comply with the order to return the land to NSDA, retroactive to the effective date of the order, and also awarded counsel fees incurred by the defendants related to the contempt motion. Gattoni, as president of NSA, executed a quit-claim deed, dated March 25, 1998, to NSDA of the land for the hotel, which was received by the defendants on March 30, 1998.

The plaintiffs claim that the judgments should be reversed on several grounds: (1) the trial court had no jurisdiction to proceed with a hearing on the defendants' motion for an injunction after the plaintiffs withdrew their complaint; (2) the court lacked authority to entertain the motion for an injunction at a short calendar proceeding before the plaintiffs closed the pleadings by responding to the allegations of the motion; (3) the court incorrectly confined the evidence to the single issue of whether Gattoni was authorized to execute the deed transferring the land from NSDA to NSA, thereby excluding evidence offered by the plaintiffs to support their defense of unclean hands; (4) the court incorrectly admitted into evidence uncertified and unauthenticated photocopies of Gattoni's deposition that were taken in another action between the parties; and (5) the court improperly decided the motion for contempt without holding a proper hearing thereon. The plaintiffs raise no claim that the evidence was insufficient to sustain the trial court's conclusion that Gattoni was not authorized to execute a deed on behalf of NSDA.

I

There is no merit to the claim that the trial court lost jurisdiction over this case when it granted the plaintiffs'

motion to withdraw their complaint. Prior to the withdrawal, the defendants filed their motion for injunctive relief. The trial court properly treated that motion as a counterclaim. "The term [counterclaim] itself is a general and comprehensive one, naturally including within its meaning all manner of permissible counterdemands." *Boothe* v. *Armstrong*, 76 Conn. 530, 532, 57 A. 173 (1904). "[T]he word 'counterclaim' was intended to be the generic term for all cross demands other than setoffs,[4] whether in law or in equity." *Lescoe* v. *Kinstler*, 136 Conn. 253, 255, 70 A.2d 131 (1949). Under Rule 13 (a) of the Federal Rules of Civil Procedure, the defendants' claim for an injunction would qualify as a compulsory counterclaim, since "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."

"The withdrawal of an action after a counterclaim, whether for legal or equitable relief, has been filed therein shall not impair the right of the defendant to prosecute such counterclaim as fully as if said action had not been withdrawn, provided that the defendant shall, if required by the judicial authority, give bond to pay costs as in civil actions." Practice Book § 10-55. Even before the rule, it was recognized that a court may exercise its jurisdiction after a case has been withdrawn. "There is no reason why the court has not jurisdiction upon a proper showing to restore to the active docket a case which has been voluntarily withdrawn, just as it can open a judgment or restore to the docket a case which has been erased." *Lusas* v. *St. Patrick's Roman Catholic Church Corp.*, 123 Conn. 166, 170, 193 A. 204 (1937). Accordingly, in this case, the trial court correctly permitted the defendants to prosecute their counterclaim.

---

[4] A right of setoff may now be asserted in response to a complaint just as a counterclaim may be so pleaded. Practice Book § 10-54.

## II

We agree with the plaintiffs that the trial court lacked jurisdiction to issue a *permanent* injunction requiring them to return to NSDA the land they wrongfully obtained because the pleadings were not closed on the allegations of the defendants' motion for an injunction. The motion alleges the agreement between Gattoni and Zaccaro to purchase land for the development of a hotel and conference center, the formation of NSDA in which Zaccaro held the majority interest, the terms of the operating agreement for NSDA pertinent to Zaccaro's authority to discharge Gattoni, and Gattoni's subsequent transfer of the land for the hotel from NSDA to NSA. Although the defendants could not have filed an answer to the complaint after it was withdrawn, the plaintiffs were obliged to respond to the factual allegations of the motion or suffer a default before the issues could be resolved by a permanent injunction.

"The fact that the pleadings were not closed restricts the authority of the trial court to render permanent judgments on pending claims." *Doublewal Corp.* v. *Toffolon*, 195 Conn. 384, 391, 488 A.2d 444 (1985). "None of these determinations [injunctions or declaratory judgments] can properly be made while the pleadings are still open." Id., 392. "A trial court may not sua sponte transform applications that request temporary injunctions into proceedings on the merits of issuance or denial of permanent injunctions." Id., 393. "According to *Doublewal*, although under certain circumstances, a temporary injunction may be transformed into a permanent injunction with the consent of the parties . . . the trial court does not have the authority to render 'permanent judgments on pending claims' where the pleadings are not yet closed." (Citations omitted.) *Ebenstein & Ebenstein, P.C.* v. *Smith Thibault Corp.*, 20 Conn. App. 23, 26, 563 A.2d 1044 (1989).

The defendants' "verified motion for injunction" does not specify whether the injunction should be temporary or permanent. Entitling it a "verified" motion indicates that only a temporary injunction was originally sought, as no verification is required for a permanent injunction. General Statutes § 52-473 (b). At the hearing, however, the trial court opined that it had to be a permanent injunction because the relief sought, conveyance of the land back to NSDA, could not be granted temporarily and then made permanent later. The memorandum of decision does not state whether the injunction ordered was temporary or permanent. It does, however, state that "[t]he purpose of such an injunction is to restore the status quo." That purpose is ordinarily achieved by a temporary injunction.

If the court intended to order a permanent injunction, it clearly lacked jurisdiction to do so because the pleadings were still open. *Doublewal Corp.* v. *Toffolon*, supra, 195 Conn. 391. That infirmity in the court's jurisdiction, however, did not impair its authority to issue a temporary injunction. It is a well established principle that "every presumption favoring jurisdiction [of the court] should be indulged." *Connecticut Light & Power Co.* v. *Costle*, 179 Conn. 415, 420–21 n.3, 426 A.2d 1324 (1980); *Tuccio* v. *Zehrung*, 164 Conn. 231, 232, 319 A.2d 406 (1973). We conclude that the injunction issued by the court compelling the plaintiffs to return the land in dispute to NSDA may be treated as a temporary injunction, despite the court's remarks at the hearing about issuing a permanent injunction.

The issuance of a temporary injunction, however, does not conclude this litigation. Further proceedings in the trial court, after the pleadings have been closed, are necessary for the purpose of obtaining a permanent injunction, unless the issues involved become moot.[5]

---

[5] Some of the issues raised in this litigation are also the subject of an action brought by Gattoni that is still pending in the Superior Court for the judicial district of New Haven.

## III

Our conclusion that the injunction ordered by the trial court must be deemed temporary because of the lack of jurisdiction to issue a permanent injunction limits our consideration of the remaining issues raised in this appeal. Unless a statutory exception is applicable, "decisions either granting or denying temporary injunctions are not final judgments and are therefore not immediately appealable." *Doublewal Corp.* v. *Toffolon,* supra, 195 Conn. 389. Accordingly, we do not address the claims concerning the court's ruling limiting the issue at the injunction hearing to the authority of Gattoni to execute the deed transferring the land in dispute from NSDA to NSA, the exclusion of evidence to prove unclean hands or the admission of uncertified copies of Gattoni's deposition. Those issues are outside the scope of our limited jurisdiction in this appeal.

## IV

The remaining issue involves the plaintiff Gattoni's appeal from the judgment finding him in contempt and the penalty imposed on him for failure to comply with the order to return the land to NSDA. That appeal was filed separately from the appeal from the judgment granting the injunction and the defendant has amended his preliminary statement of issues accordingly.

On March 19, 1998, the defendants filed a motion to hold Gattoni in contempt and to impose sanctions for his failure to return immediately to NSDA the land that he had transferred to NSA, as directed in the memorandum of decision filed on March 30, 1998. The trial court had denied the plaintiffs' motion for a stay of execution of the injunction on the same date that it ordered the return of the land. The plaintiffs filed a motion for review of the denial of the stay with this court, but the motion was dismissed. That motion was not filed within the ten days allowed for such a motion by Practice

Book § 66-6, and the plaintiffs did not file their appeal from the judgment issuing the injunction before the motion for review was filed. Notice of the dismissal was sent out on April 23, 1998.

The record does not indicate that the trial court held a hearing on the defendant's contempt motion before granting it. On March 30, 1998, the trial court filed a memorandum of decision finding that Gattoni "failed to obey the court's order to return the disputed property to NSDA, and therefore finds that he is in contempt of court." In addition, the court ordered that Gattoni "pay $250 for each day that he refuses to return the disputed property retroactively to the date of the court's order, March 3, 1998," and that he also pay the defendants' costs and attorney's fees for the contempt motion.

We agree with the plaintiffs that Gattoni was entitled to a hearing or trial before the trial court held him in contempt or imposed sanctions on him. Although it is clear that Gattoni did not comply with the injunction issued on March 3, 1998, ordering him to return the land involved to NSDA immediately, the failure to obey an injunction must be wilful to support a finding of contempt. "The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt." *Mallory* v. *Mallory*, 207 Conn. 48, 57, 539 A.2d 995 (1988). A judgment of contempt cannot be based on representations of counsel in a motion, but must be supported by evidence produced in court at a proper proceeding. The defendants do not claim that Gattoni's failure to comply with the injunction was a criminal contempt that occurred in the presence of the court. In such a proceeding, a court can find a party in contempt on the basis of its own observations. In this case, only a civil or indirect contempt is involved. "It is beyond question that 'due process of law . . . requires that one charged with contempt of court be advised of the charges against

him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.' " *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 150, 496 A.2d 476 (1985). "[T]he evidence necessary to constitute the alleged contempt must have been established by sufficient proof in the trial court." *Potter* v. *Board of Selectmen*, 174 Conn. 195, 197, 384 A.2d 369 (1978). "[T]he court had no power to proceed to a trial and judgment of condemnation in the absence of the accused." *Welch* v. *Barber*, 52 Conn. 147, 157 (1884).

The defendants claim that any deficiencies in the contempt order were cured at a later proceeding before the trial court, which the parties attended represented by counsel. The defendants filed another motion for contempt and sanctions on March 19, 1998, because the plaintiffs at that time had not returned the land to NSDA pursuant to the March 3, 1998 order. On May 11, 1998, when the defendants' second motion was heard, the plaintiffs had returned the land to NSDA as ordered and had filed both the appeal from the judgment granting the injunction and the appeal from the judgment of contempt.

At the outset of the May 11 hearing, the plaintiffs requested to be heard on a motion they filed for the purpose of staying the March 30, 1998 judgment of contempt and sanctions order, from which an appeal was filed on April 17, 1998. After hearing testimony about Gattoni's finances, the court granted a stay of the contempt and sanctions judgment without requiring a bond. With respect to the motion for sanctions and attorney's fees, the court ordered Gattoni to pay $6750 in sanctions for the delay of twenty-seven days in delivering a properly executed deed of the land involved from NSA to NSDA and also ordered him to pay $7024 for attorney's

fees and $53 for costs. The court granted stays of execution pending appeal for each of those judgments.

During the proceeding on May 11, 1998, the trial court asked the plaintiffs' attorney if he wanted a hearing as to whether his client should be held in contempt. The attorney responded that the matter was on appeal. The court inquired whether he was seeking a further hearing in the trial court as to whether the contempt order should have issued, to which counsel answered, "No."

The defendants contend that the trial court's offer of a hearing during the May 11 proceeding, which the plaintiffs refused, cures the infirmity of the lack of a hearing before the contempt and sanctions judgment of March 30. We are not persuaded that the flaw in the judgment finding Gattoni in contempt and ordering sanctions could have been so easily rectified. The court did not offer to open that judgment. The plaintiffs' attorney might well have been concerned about the difficulty of persuading a trier of fact to reverse conclusions that were reached and publicly announced in the earlier proceeding. We conclude that the failure to hold a hearing before finding Gattoni in contempt and ordering the sanctions to be imposed for failure to comply with the injunction requires that we reverse that judgment. That conclusion also makes it necessary for us to reverse the judgment resulting from the May 11 proceeding, in which the court ordered Gattoni to pay $6750 as sanctions and $7077 as attorney's fees and costs.[6]

The judgment of March 3, 1998, issuing a temporary injunction ordering the return of the land in dispute to the defendant North Stonington Development Associates is affirmed. The judgment of March 30, 1998, finding

---

[6] The plaintiffs did not file an appeal from the May 11, 1998 judgment. Nevertheless, our conclusion that the March 30, 1998 judgment finding the named plaintiff in contempt and imposing sanctions must be reversed also requires that we reverse, sua sponte, the May 11, 1998 judgment.

the named plaintiff in contempt and ordering sanctions and attorney's fees is reversed. The judgment of May 11, 1998, ordering the named plaintiff to pay sanctions and attorney's fees is also reversed and the case is remanded for further proceedings to determine whether the named plaintiff should be found in contempt for violating the injunction and whether to impose sanctions for any such violation.

In this opinion the other judges concurred.