[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Donald Franco comes before the court on a post judgment motion for contempt addressed to the defendants, Peter Santino and Herman Dostie. It is resisted by these defendants who have, in turn, filed a motion to dismiss challenging this court's jurisdiction to hear the motion for contempt.
Factual and Procedural Background
In 1991, by stipulated agreement, East Shore Development, Inc. [East Shore], received a Certificate of Need for the construction and operation of a long term care facility. At that time, Peter Santino and Herman Dostie were all of the shareholders of East Shore Development, Inc. On or about September 24, 1992, an option agreement was executed which granted Franco an option to purchase 80% of the shares of East Shore, at such time as the "facility," which was defined as a Certificate of Need to construct a 120 bed nursing facility in East Haven, Connecticut was licensed by the state. The option agreement provided a method for ascertaining the purchase price of those optional shares and other terms relating to the exercise of the option.
A license to operate the Facility was granted on October 18, 1993 to Laurel Woods, Inc., which has held the license since that date. Commencing at least as early as November 1, 1993, East Shore leased the premises to Laurel Woods, Inc. The lease for November 1, 1993 to October 31, 1994 was for $90,000 per month plus $15,000 per month for taxes. On October 1, 1995 an annually recurring lease for $115,000 per month was entered into between East Shore and Laurel Woods. Subsequently, a lease was executed between East Shore and Laurel Woods, Inc. for three years, July 1, 1998 to June 30, 2001, with a three year renewal ending June 30, 2004, for $96,000 per month rent. Thereafter, on July 1, 2000, this lease was modified to commence July 1, 2000, to run three years with rights of subsequent options that were exercised by Laurel Woods, Inc. It is this last lease transaction that has been the center of the immediate controversy.
On May 7, 1997, Franco gave Dostie and Santino notice that he was CT Page 14630 exercising the Option Agreement to purchase the 80% shareholder ownership interest in East Shore. The Agreement contained an arbitration provision, in the event "any disagreement between the parties with respect to the interpretation or application of the obligations of the parties." Franco made demand for arbitration seeking 1) specific performance of the Option Agreement, and 2) an appraisal of the property that was the subject of the agreement in accordance with its terms. Arbitration commenced and completed.
The Award of Arbitrators was issued on August 14, 1998. It set a fair market value for purchase price of the optioned shares. It also set a closing date and ordered the Respondents (Dostie and Santino) to certify that their representations and warranties made as a part of the option remained accurate.
As of April 17, 1998, Franco was aware that in purchasing the East Shore stock he was not, and could not be, purchasing any ownership interest in Laurel Woods, Inc. As of that time, Franco anticipated that, upon gaining his majority ownership of East Shore, a new lease would be executed with Laurel Woods, Inc. On May 21, 1998, the State Department of Public Health communicated its understanding that upon stock transfer, East Shore, the real property owner would be held by Franco 80%, Santino 10% and Dostie 10%, and, that Laurel Woods, Inc., the operating entity/license would be owned 50% by Dostie and 50% by Santino.
The parties each brought an action to the Superior Court. Franco seeking to confirm and East Shore Development seeking to vacate the arbitration award. On July 31, 1998, Franco placed a lis pendens on the Land Records of East Haven, liening the premises. By memorandum of decision dated December 23, 1998, the Superior Court (Pittman, J.) confirmed the award and reset the closing date for the transaction. The new closing date was set for January 30, 1999. That did not occur as an appeal ensued. On November 20, 2000 the Superior Court (Pittman, J.) issued a post judgment temporary injunction/restraining order which enjoined East Shore, Santino, Dostie, and their assigns to "wholly and absolutely desist and refrain from:
1. Entering into any agreements, conduct any transactions, selling, transferring or encumbering any property of East Shore Development, Inc. and from taking any actions in furtherance of or attempting in any manner whatsoever affecting disposing of the assets of East Shore Development, Inc. and any of the shares of said corporation owned by Peter Santino and Herman Dostie. This prohibition shall run to East Shore Development, Inc., Peter Santino and Herman Dostie in their individual capacity and in their capacity as agent, servant, owner or officer of any business enterprise. The intention of this order is to maintain the status quo CT Page 14631 until the time of closing as mandated by the judgment rendered in the above captioned matter.
2. East Shore Development, Peter Santino and Herman Dostie are affirmatively ordered to continue to operate the business of East Shore Development, Inc. In the ordinary course and to allow the operation of the licensed skilled nursing home in a good and business like fashion until the time of the closing contemplated by the judgment entered in this action. Until such closing, the status quo shall be maintained. East Shore Development, Inc., Peter Santino and Herman Dostie shall continue to cause the payment of all expenses of the corporation, all mortgage, tax and insurance payments."
Two days after this order was entered, Dostie and Santino recorded the new lease (that was executed on July 1, 2000) on the Land Records of the Town of East Haven.
On April 10, 2001 Franco closed the transaction with East Shore, Dostie and Santino, by which Franco acquired 80% of the outstanding shares of East Shore. Also, the updated warranties and representations made by Dostie and Santino were provided to Franco at closing as required by the court judgment confirming the arbitration award.
In the post judgment motion for contempt dated April 20, 2001 and filed with the court on July 25, 2001, Franco claims that Santino and Dostie are in contempt of the court orders of the judgment, and the restraining order/injunction by virtue of the execution of the leasehold arrangements with Laurel Woods, Inc.[1]
Santino and Dostie resist the contempt motion and have moved to dismiss it, claiming that the court lacks subject matter jurisdiction over the issues raised in the motion. Specifically, Santino and Dostie claim that the motion for contempt raises issues outside of the scope of the original Demand for Arbitration and the court order confirming the arbitration award. Further, Santino and Dostie argue, that to the extent Franco seeks an order of the court affecting the licensure of the Laurel Woods nursing facility, such an order would be improper, for it would intrude upon the domain of the state licensing agency without authority to do so.
Contempt Standard
Before finding a person in contempt for the wilful violation of a court order, the trial court must consider the circumstances and facts surrounding the violation. Wilson v. Wilson, 38 Conn. App. 263, 275-76,661 A.2d 621 (1995). In re Daniel C., 63 Conn. App. 339, 369, ___ A.2d CT Page 14632 ___ (2001).
"Contempts of court may be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court. . . . The defendant's failure to comply with the support order is, therefore, an indirect contempt because it occurred outside the presence of the trial court." Billings v. Billings, 54 Conn. App. 142,152, 732 A.2d 814 (1999). "[A] finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases." (Citations omitted; internal quotation marks omitted.) Sgarellino v. Hightower, 13 Conn. App. 591, 595-96, 538 A.2d 1065
(1988).
"[T]he failure to obey an injunction must be wilful to support a finding of contempt. The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt." Mallory v. Mallory, 207 Conn. 48, 57, 539 A.2d 995 (1988)."Gattoni v. Zaccaro, 52 Conn. App. 274, 284, 727 A.2d 706 (1999).
Discussion
At all times involved, Franco was aware that there was a lease between East Shore and Laurel Woods, Inc. for the operation of the Facility. Therefore, as a matter of both equity and the pleadings, Franco was on notice that he was purchasing a shareholder interest in a corporation (East Shore) that had leased the premises to Laurel Woods, Inc. for the operation of a nursing facility.
The authority of this court regarding the pending Motion for Contempt is only, then, in the context of whether any conduct of Santino and Dostie after the November 20, 2000 court order was in violation of that court order, and/or, in violation of the judgment itself.
Prior to November 20, 2000, more than one successive lease had been entered into between Laurel Woods, Inc. and East Shore, Inc. The leases were one year leases, with one year renewals, until July 1, 1998 when a three year lease with a three year renewal was entered into. That lease predated the November 20, 2000 injunctive order of the court. However, that least was not left to run its course by Santino and Dostie. On July 1, 2000 acting as principal of both East Shore and Laurel Woods, a new lease was executed by Santino and Dostie, which was not recorded on the Land Records of the Town of East Haven until November 22, 2000. This lease superseded the July 1, 1998 lease and was made for a period to end June 30, 2003 with an additional five year option. CT Page 14633
The recordation of the lease two days after the injunction order was a violation of the injunction. The language of the injunction was clear and unambiguous. The recordation of the lease constituted an encumbrance on the property of East Shore. There was no reason for its recordation proffered that could excuse the violation of the court order enjoining encumbrancing or conveying an interest in the property.
Therefore, the court finds Dostie and Santino in contempt of the November 20, 2000 court order by causing or allowing the July 1, 2000 executed lease to be recorded on the Land Records of the Town of East Haven thus constituting an encumbrance on the property of East Shore. This conduct was wilful and indefensible in the face of the charge of contempt.
At argument, the relief sought by Franco was all necessary actions to cure the contempt, including seeking a removal of the lease from the Land Records and a termination of the leasehold between Laurel Woods and East Shore. The problem with the latter remedy is that there has always been a leasehold, dating back to before Franco's exercise of his option. The terms of the lease have changed; perhaps they are perceived as presently disadvantageous by Santino; however, it was always contemplated that he would purchase his shares with knowledge of an existing lease. None of the other claims raised by Santino constitute actions in contempt of this court's orders within the strictures of what was before this court originally and was ordered by the court. By virtue of this order the court has found jurisdiction to act in this matter and therefore the Motion to Dismiss is denied.
The court can and will put the parties back to the position they were in prior to the recordation of the lease. The court, finding Santino and Dostie in contempt, orders them to cause a Release of the Notice of Lease to be recorded on the Land Records of the Town of East Haven within Fourteen days of the date of this order.
By the Court,
_________________ Lynda B. Munro Judge of the Superior Court