[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION: MOTION FOR SUMMARY JUDGMENT; MOTION TO STRIKE
The plaintiffs, Classic Limousine Airport Service, Inc. (Classic) and Carey Limousine Stamford (Carey) (collectively, the plaintiffs) brought this action against the defendants, Alliance Limousine (Alliance), Alan Oyugi (Oyugi), and Nicholas Topilyncky (Topilyncky). In their amended complaint the plaintiffs claim, inter alia,[1] that the defendants violated the Connecticut Uniform Trade Secrets Act (CUTSA), General Statutes § 35-50 et seq, and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.
The plaintiffs allege the following pertinent facts in their amended complaint: Oyugi, a former employee of Classic, violated CUTSA by misappropriating trade secrets in the form of customer lists, "profiles" and other confidential information belonging to the plaintiffs. Oyugi utilized the plaintiffs' trade secrets in forming his own limousine company, Alliance, in competition with and to the economic detriment of the plaintiffs. Oyugi also engaged in unfair trade practices in violation of CUTPA, by spreading false information about Classic to the plaintiffs' customers, drivers, and employees, and in using Classics livery permit and/or plates and insurance policies without its consent.
The plaintiffs sought a temporary injunction prohibiting Alliance and Oyugi (hereinafter, the defendants) from, inter alia.[2] using any of the plaintiffs' trade secrets or confidential information. The court,D'Andrea, J., denied the plaintiffs' application for temporary injunction. Classic Limousine Airports Service, Inc. v. AllianceCT Page 10258Limousine, LLC, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 174911 (August 1, 2000, D'Andrea, J.).
On March 9, 2001, the defendants filed an answer, special defenses and a counterclaim. The second special defense sounds in unclean hands. The six count counterclaim asserts a cause of action for a violation of CUTPA, a claim for attorney's fees pursuant to General Statutes §35-54, abuse of process, tortious interference with a business expectancy, libel per se, and vexatious litigation. The defendants also seek relief pursuant to General Statutes §§ 52-568, 42-110g (a), (d), and 35-54. On July 13, 2001, the plaintiffs filed a motion to strike the defendants' second special defense, and all counts of their counterclaim and claims for relief. On July 17, 2001, the defendants filed a motion for summary judgment on every count of the plaintiffs' amended complaint. Both the motion to strike and the summary judgment motion are the subject of this decision. The defendants' motion for summary judgment will be considered first.
 I.
The defendants move for summary judgment on every count of the plaintiffs' amended complaint on the ground that the court, D'Andrea, J.
already denied the plaintiffs' application for a temporary injunction and that this denial constitutes the law of the case. The defendants rely onBilik v. Zoning Board of Stamford, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 143335 (September 4, 1996,D'Andrea, J) for the proposition that the law of the case doctrine is applicable to a summary judgment motion when the court previously denied an application for a temporary injunction. In response, the plaintiffs argue, inter alia, that the standards applicable to a motion for summary judgment and a motion for temporary injunction are different and therefore the law of the case doctrine is inapplicable. The plaintiffs also contend that other facts may arise between the denial of the temporary injunction and the trial so that it would be premature to apply the doctrine of law of the case at this point. They also assert that the parties have not agreed that the factual findings of the temporary injunction hearing should be binding on this court and that the law of the case doctrine would not be appropriate. For the reasons that follow, the court agrees with the plaintiffs and accordingly will not apply the law of the case doctrine to the motion for summary judgment at bar.
"The law of the case [doctrine] . . . is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . In essence it expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . A judge should hesitate to change his CT Page 10259 own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if the case comes before him regularly becomes convinced that the view of the law previously applied . . . was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Internal quotation marks omitted.) State v. Arena, 235 Conn. 67, 80, 663 A.2d 972 (1995). "A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision." (Internal quotation marks omitted.) Miller v.Kirshner, 225 Conn. 185, 192, 621 A.2d 1326 (1993).
"The law of the case doctrine provides that when a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) Wagner v. Clark Equipment Co., Inc., 259 Conn. 114, 130 n. 21,788 A.2d 83 (2002). "[O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Brackets in original; internal quotation marks omitted.) Id., 131. "[A]n order granting or denying a temporary injunction is considered interlocutory and therefore is not an appealable final judgment." (Internal quotation marks omitted.)Southington v. Pierce, 29 Conn. App. 716, 720, 617 A.2d 929 (1992). Although the law of the case doctrine can apply to temporary injunctions, the court finds that it is not applicable to the case at bar for the following three reasons.
First, it would be premature for the denial of the plaintiffs' preliminary injunction to become the law of the case because new facts may arise between now and trial. "A party may, after losing a bid for temporary relief, assemble a much weightier volume of evidence for subsequent stages of the proceedings." Byars v. Waterbury, supra,27 Conn.L.Rptr. 613. The law of the case doctrine regarding a preliminary injunction has been found to be inapplicable in a summary judgment motion because "the opportunity to prepare and to present complete evidence is limited by the shorter time allocated to such early [preliminary injunction] proceedings." Id.; see Hayes v. Rowayton Beach Assn, Inc., supra, Docket No. 173727 (law of the case doctrine is inapplicable because new facts are being presented which were not allowed at prior temporary injunction hearing.); Labor Ready, Inc. v. Zambory, supra, Docket No. 424865 (evidence evaluated in temporary injunction proceeding may be incomplete because temporary injunction hearing occurred before pleadings were amended and discovery completed). CT Page 10260
In the case at bar, there is evidence that has yet to be discovered as to whether the defendants were in possession of trade secrets. The plaintiffs argue the plaintiffs' customer profiles are trade secrets and that Classic made reasonable efforts to maintain the secrecy of such trade secrets. Moreover, the plaintiffs also seek to prove that Oyugi competed with the plaintiffs while he was employed by Classic, and that Oyugi obtained trade secrets to compete with the plaintiffs. However, the plaintiffs have not been afforded a full and fair opportunity to obtain either depositions or documentary evidence from Alliance and Oyugi regarding these claims that the plaintiffs seek to prove. Plaintiffs served the defendants with 48 document requests as well as 25 interrogatories on May 30, 2001. To date, the defendants have not produced any documents, nor have they responded to any interrogatories. Additionally, Oyugi is the only witness that the plaintiffs have had the opportunity to depose. There have been no depositions taken of Alliance's customers or investors. Without discovering such evidence, it would be premature for the court to grant the defendants' summary judgment motion based on the doctrine of the law of the case.[3]
Not only would the court be shortening the parties' opportunity to gather and present evidence, the court would also be according a decision on an application for a temporary injunction with a resjudicata effect. As one court explained, "[i]f, as the defendants advocate, factual findings entered in a preliminary phase of the case became the law of the case, from which a subsequent court could not depart, then virtually no litigant who failed to prevail in a hearing on a discrete claim for relief., such as a prejudgment attachment or temporary injunction, could ever expect to prevail at trial. Such is not the state of the law. Res judicata effect applies only to orders that meet the standards of finality for appeal, not interlocutory rulings. CFM of Connecticut, Inc.v. Chowdhury, [239 Conn. 375, 398-99, 685 A.2d 1108 (1996), overruled on other grounds, State v. Salmon, 250 Conn. 147, 154-55, 737 A.2d 333
(1999)]." Byars v. Waterbury, supra, 27 Conn.L.Rptr. 613.
The defendants mistakenly analogize the case at bar to Bilik v. ZoningBoard of Stamford, supra, Docket No. 143335 for the proposition that the law of the case doctrine applies when a prior temporary injunction was denied. In Bilik, in denying the application for a temporary injunction, the court also held that the amendment in controversy was constitutional. The court held that the law of the case doctrine was controlling as to the constitutionality of the amendment for purposes of a subsequent declaratory judgment motion. Bilik did not involve the lack of discovery that is present in this case. Rather, Bilik involved a question of law. The doctrine of the law of the case was applied to determine the constitutionality of an amendment in both an application for a temporary injunction and motion for declaratory judgment. Because CT Page 10261 discovery has yet to be completed and because a question of law is not at issue, the law of the case doctrine should not be applied.
Second, a temporary injunction and a motion for summary judgment are governed by different standards of review. "The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." (Internal quotation marks omitted.) Rustici v. Malloy, 60 Conn. App. 47,56, 758 A.2d 424, cert. denied, 254 Conn. 952, 762 A.2d 906 (2000).
On the other hand, "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Citations omitted; internal quotation marks omitted.) H.O.R.S.E. of Connecticut, Inc. v. Washington,258 Conn. 553, 558-59, 783 A.2d 993 (2001). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Sherwood v. Danbury Hospital, 252 Conn. 193,201, 746 A.2d 730 (2000). "A directed verdict is justified if, on the evidence the jury reasonably and legally could not have reached any other conclusion." Gagne v. Vaccaro, 255 Conn. 390, 400, 766 A.2d 416 (2001).
The court should not grant summary judgment merely because an application for a temporary injunction was denied. The standards of the two motions are different and accordingly, the law of the case doctrine is inappropriate in the situation at bar. See Labor Ready, Inc. v.Zambory, Superior Court, judicial district of New Haven, Docket No. 424865 (December 27, 2000, Zoarski, J.) (prior granting of temporary injunction not law of the case for purposes of motion for summary judgment because standards of two motions are different.)
The third reason that the law of the case doctrine is inapplicable is because, "[u]nless parties have formally agreed to consolidation of the hearing regarding temporary injunctive relief with the trial on the merits of the claim for permanent relief, the factual findings from the first proceeding do not become binding." Id., citing, Doublewal Corp. v.Toffolon, 195 Conn. 384, 392-93, 488 A.2d 444 (1985). In the case at CT Page 10262 bar, the plaintiffs did not consent to convert the preliminary hearing into a full trial on the merits. Moreover, "`[a] trial court may not sua sponte transform applications that request temporary injunctions into proceedings on the merits of issuance or denial of permanent injunctions.'" Gattoni v. Zaccaro, 52 Conn. App. 274, 281, 727 A.2d 706
(1999), quoting, Doublewal Corp. v. Toffolon, supra, 195 Conn. 393 see also Stamford v. Kovac, 228 Conn. 95, 110, 634 A.2d 897 (1993). The court will not sua sponte convert the findings of the temporary injunction hearing into a binding finding of fact, nor will it grant summary judgment based on these facts.
For the preceding reasons, the doctrine of the law of the case doctrine does not apply under the present circumstances. Furthermore, the defendants have not met their burden of showing the absence of a genuine issue of material fact on the plaintiffs' causes of action through any affidavit or other evidence. See 2830 Whitney Avenue Corp. v. HeritageCanal Development Associates, Inc., 33 Conn. App. 563, 567, 636 A.2d 1377
(1994) ("The existence of the genuine issue of material fact must be demonstrated by counter affidavits and concrete evidence."). Accordingly, the defendants' motion for summary judgment is denied.
 II.
The court will now examine the plaintiffs' motion to strike the defendants' counterclaims, second special defense and claims for relief. "[A] motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court."Jewish Home for the Elderly of Fairfield County, Inc. v. Cantore,257 Conn. 531, 537-38, 778 A.2d 93 (2001). "In ruling on a motion to strike the trial court is limited to considering the grounds specified in the motion." Meredith v. Police Commission, 182 Conn. 138, 140, 438 A.2d 27
(1980). "The role of the trial court [is] to examine the complaints, construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action." Napoletano v. CignaHealthcare of Connecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127
(1996). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted; internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 588, 693 A.2d 293
(1997). "[A] trial court must take the facts to be those alleged in the complaint . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.)Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990). "[W]hat is necessarily implied [in an allegation, however,] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a [pleading] challenged by [an opposing party's] motion to CT Page 10263 strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citations omitted; internal quotation marks omitted.) Gazov. Stamford, 255 Conn. 245, 260-61, 765 A.2d 505 (2001).
 A.
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." (Citations omitted; internal quotation marks omitted.) Fairfield LeaseCorp. v. Romanos Auto Service, 4 Conn. App. 495, 496, 495 A.2d 286 (1985) see also Practice Book § 10-39(a).[4] A counterclaim "is a cause of action existing in favor of the defendant against the plaintiff and on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action." Id. It is "a cause of action . . . which a defendant pleads to diminish, defeat or otherwise affect a plaintiffs claim and also allows a recovery by the defendant." (Internal quotation marks omitted.) Home Oil Co. v. Todd, 195 Conn. 333, 341, 487 A.2d 1095
(1985).
 1.
The defendants allege the following pertinent facts in the first count of the counterclaim amounting to the plaintiffs violation of CUTPA: The plaintiffs action based on CUTSA violations is a sham because Ronald Ventura and Leonard Ventura, the individuals who formed Classic, made statements in the "Representation and Warranty" to Carey to the effect that Classic did not possess any confidential information, trade secrets or other proprietary information. Ronald Ventura wrote numerous threats to the defendants' attorney saying that, "you will be barraged with an arsenal of extremely experienced litigators who will make your head spin. . . ." He also wrote that "Oyugi is going to need unlimited amounts of money to defend himself." Thus, the defendant claims this is a sham lawsuit because the plaintiffs' primary purpose in commencing and pursuing it were and are to harm and/or destroy the defendants' business interests.
The plaintiffs move to strike count one of the counterclaim on the following four grounds: the filing of a single non-sham lawsuit is protected by the Noerr-Pennington doctrine; the CUTPA violation alleged in the counterclaim cannot be litigated unless and until the defendants prevail in the underlying lawsuit; the defendants fail to allege facts that would satisfy the elements of a CUTPA violation; and this counterclaim does not arise out of the same transaction as the amended complaint, as required by Practice Book § 10-10. CT Page 10264
 i.
As to the plaintiffs' contention that the plaintiffs' cause of action is not a sham litigation[5] and is, therefore, protected by the Noerr-Pennington Doctrine, the Connecticut Appellate Court recently adopted the Noerr-Pennington doctrine in Zeller v. Consolini,59 Conn. App. 545, 552, 758 A.2d 376 (2000). "The Noerr-Penningon
doctrine has evolved from its antitrust origins to apply to a myriad of situations in which it shields individuals from liability for petitioning a governmental entity for redress." Id., 551. "Although theNoerr-Pennington doctrine provides broad coverage to petitioning individuals or groups, its protection is not limitless." Id. "In short, petitioning activity is not protected if such activity is a mere sham[6]
or pretense to interfere with no reasonable expectation of obtaining a favorable ruling." Id., 552, citing, Litton Systems, Inc. v. AmericanTelephone Telegraph Co., 700 F.2d 785, 809-12 (2d Cir. 1983), cert. denied, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984).
"A sham lawsuit is one instituted by [a] plaintiff in bad faith, on grounds so flimsy that no reasonable prudent person could hold a bona fide belief in the existence of facts necessary to prove the case." (Internal quotation marks omitted.) New Milford Savings Bank v. Jajer, Superior Court, judicial district of Litchfield, Docket No. 61073 (January 2, 2001, Frazzini, J.) (28 Conn.L.Rptr. 490); Stewart TitleGuaranty Co. v. Baum, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 394160 (December 18, 1991, Satter,J.T.R.) (7 C.S.C.R. 193); Connecticut National Bank v. Mase, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 269180 (January 31, 1991, Flynn, J.) (3 Conn.L.Rptr. 285). To determine whether a lawsuit falls within the ambit of the sham exception, in Zellerv. Consolini, supra, 59 Conn. App. 552, the court, adopted a two part test. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. . . . Second, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor . . . through the use [of] the governmental process — as opposed to the outcome of that process — as an anticompetitive weapon. . . ." (Citations omitted; internal quotation marks omitted.) Id., quoting Professional Real Estate Investors, Inc. v.Columbia Pictures Industries, Inc., 508 U.S. 49, 60-62, 113 S.Ct. 1920,123 L.Ed.2d 611 (1993).
To satisfy the first prong of the sham litigation test, the defendants must plead facts which would support a claim that the plaintiffs' action is objectively baseless. Reading this count in the light most favorable CT Page 10265 to the defendants, if the plaintiffs knew that they did not have any confidential information, trade secrets or other information, then the plaintiffs could not prove that the defendants violated CUTSA or CUTPA. Moreover, the second prong is satisfied because the alleged letters and threats that Roland Ventura made to the defendants' attorney indicate that the purpose of the plaintiffs' lawsuit was to harm and or destroy the business interests of the defendants. This court concludes that such allegations indicate that the plaintiffs were attempting to use the legal process to directly interfere with their competitor's business relationships. It is therefore apparent that the defendants have satisfied the sham litigation test and the court cannot strike this count of the counterclaim on this ground.
The second ground the plaintiffs raise for striking count one of the counterclaim is essentially that the defendants' CUTPA counterclaim is a claim of vexatious litigation. The plaintiffs argue that such a claim cannot be raised unless the litigation claimed to be vexatious has terminated in the defendants' favor.[7] The Connecticut Appellate Court has noted "that the Noerr-Pennington [sham exception] is similar to existing law in Connecticut governing the torts of . . . vexatious litigation." Zeller v. Consolini, supra, 59 Conn. App. 554 n. 5. One Superior Court has identified that the Noerr-Pennington sham exception standard "varies slightly from the language adopted by Connecticut appellate authority in determining probable cause in a vexatious litigation suit. . . ." Rosenkrantz v. Olson, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 172872 (January 3, 2000, Mintz, J).
Nevertheless, no court has applied the requirement that the underlying lawsuit terminated in the defendants' favor to a claim based on theNoerr-Pennington sham exception. Rather, "[a] failure of the challenged action is only one factor in determining whether an action is a sham."Zeller v. Consolini, supra, 59 Conn. App. 560, citing SunergyCommunities, Inc. v. Aristek Properties, Ltd., 535 F. Sup. 1327, 1331
(D.Colo. 1982). Moreover, "[w]hen the . . . defendant has lost the underlying litigation, a court must resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation. " (Internal quotation marks omitted.) Zeller v. Consolini, supra,59 Conn. App. 560, quoting, Professional Real Estate Investors, Inc. v.Columbia Pictures Industries, Inc., supra, 508 U.S. 60 n. 5. For these reasons, the requirement that the underlying lawsuit terminated in the defendants' favor does not apply to a sham litigation action. Accordingly, this is not a proper ground to strike the first count of the counterclaim. CT Page 10266
 iii.
The plaintiffs also claim that the first counterclaim should be stricken on the ground that the defendants fail to sufficiently plead a CUTPA violation because they have not alleged any facts that would support a public policy violation nor have they sufficiently pleaded any ascertainable loss. "[I]t is well settled that in determining whether a practice violates CUTPA [the Connecticut Supreme Court has] adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Brackets in original; internal quotation marks omitted.) Hartford Electric Supply Co. v. Allen-Bradley Co.,250 Conn. 334, 367-68, 736 A.2d 824 (1999).
Contrary to the plaintiffs' argument, the defendants are not required to allege a violation of public policy to sufficiently plead a CUTPA violation. See Id. Instead, the court finds that the defendants have sufficiently alleged a CUTPA counterclaim sounding in a sham litigation under the second criteria of the cigarette rule. Specifically, the defendants allege conduct by the plaintiffs that is oppressive and unscrupulous, because it subjects the defendants to the expense of hiring counsel to overcome the plaintiffs' dishonest, anticompetitive effort to harm and/or destroy the defendants' businesses See Roncari DevelopmentCo. v. GMG Enterprises, Inc., 45 Conn. Sup. 408, 432, 718 A.2d 1025
(1997) (sham litigation is oppressive and unscrupulous because it subjects the plaintiff to hiring counsel to litigate.) For this reason, this count will not be stricken on this ground.
The plaintiffs also incorrectly argue that the first count of the counterclaim is insufficiently pleaded because the defendants fail to plead an ascertainable loss. General Statutes § 42-110g (a) "affords a cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b. . . . [L]oss has a broader meaning than the term damage. . . . As a consequence, [u]nder CUTPA, there is no need to allege or prove the amount of the ascertainable loss." (Brackets in original; citations omitted; internal CT Page 10267 quotation marks omitted.) Beverly Hills Concepts, Inc. v. Schatz Schatz, 247 Conn. 48, 79, 717 A.2d 724 (1998). The defendants allege that the plaintiffs' conduct was an attempt to destroy the plaintiffs as potential competitors and, furthermore, such conduct caused the loss of prospective customers. These allegations are adequate to allege ascertainable loss. Consequently the first counterclaim cannot be struck on the ground that the first counterclaim has been insufficiently plead.
 iv.
The plaintiffs also move to strike the first count of the counterclaim on the ground that it does not arise out of the same transaction that is the subject of the plaintiffs' amended complaint and thus is in violation of Practice Book § 10-10.[8] The court disagrees. The counterclaim for sham litigation, by its nature arises out of the subject of the plaintiffs' complaint. For this reason, this first count does not violate Practice Book § 10-10 and should not be stricken on this ground.
Accordingly, the defendants have sufficiently pleaded a counterclaim for a CUTPA violation and therefore the plaintiffs' motion to strike this counterclaim is denied. Consequently, the plaintiffs motion to strike the defendants' corresponding request for punitive damages, costs and fees according to General Statutes §§ 42-110g (a)[9] and (d)[10] is denied as well. See Pamela B. v. Ment, 244 Conn. 296, 325, 709 A.2d 1089
(1998) ("Practice Book . . . § 10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally awarded.").
 2.
The court will next examine the second and sixth counts of the counterclaim in reverse order. In the sixth count of the counterclaim for common law vexatious litigation, the defendants reallege the facts of the first count. of particular importance, they allege that: The plaintiffs' action was instituted, and is being pursued, without probable cause, and with malicious intent unjustly to vex and trouble the defendants. In the second count, in which they also reallege the facts of the first count, the defendants allege the following: Because the plaintiffs' underlying lawsuit sounding in CUTSA was made in bad faith and for other improper purposes, the defendants are entitled to the attorney's fees they incurred in defending the suit, pursuant to General Statutes § 35-54.[11]
For the reasons that follow, the motion to strike the second and sixth counts and corresponding prayers for relief is granted.
"In a . . . vexatious litigation action, it is necessary to prove want of probable cause, malice and a termination of [the] suit in the plaintiffs' favor. . . . [Establishing] a cause of action for vexatious CT Page 10268 suit requires proof that a civil action has been prosecuted not only without probable cause but also with malice. . . . It must also appear that the litigation claimed to be vexatious terminated in some way favorable to the defendant therein." (Citations omitted; internal quotation marks omitted.) QSP, Inc. v. AETNA Casualty Surety Co.,256 Conn. 343, 361, 773 A.2d 906 (2001). This court has previously held that "[a] claim [of vexatious litigation] is pled, if pled at all as a separate action when the [underlying] case is concluded." (Brackets in original; internal quotation marks omitted.) Glazer v. Dress Barn, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 178375 (March 30, 2001, D'Andrea, J.) (29 Conn.L.Rptr. 596), quoting, DeSimone v. Dino, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 159293 (October 13, 1998,D'Andrea, J.).
Most cases in the Superior Court agree with this premise and judges have consequently stricken vexatious litigation counterclaims when they are asserted in the same case that the counterclaiming party claims to be vexatious. See Gilbert v. Beaver Dam Assn. of Stratford, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 374905 (July 24, 2001, Rush, J.); Sussman v. D.A.N. Joint Venture, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 562163 (February 10, 1997, Aurigemma, J.); Weichert Realtors v. Zink, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 140213 (October 22, 1996, Mintz, J.)[12] The court likewise holds that a counterclaim sounding in vexatious litigation must be stricken if it is brought in the same suit that the counterclaim claims is vexatious. For this reason the sixth counterclaim is stricken because it is legally insufficient in that the underlying lawsuit the defendants claim is vexatious has not terminated in their favor. Consequently, the defendants' corresponding claim for relief pursuant to General Statutes § 52-568,[13] the statutory cause of action for vexatious litigation, must be stricken as well. See Pamela B. v. Ment, supra,244 Conn. 325 ("Practice Book . . . § 10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally awarded.").
Similarly, the second counterclaim and corresponding claim for relief will likewise be stricken. General Statutes § 35-54 provides that "If a claim of misappropriation is made in bad faith or a motion to terminate an injunction is made or resisted in bad faith, the court may award reasonable attorneys fees to the prevailing party." In interpreting this provision, a Connecticut trial court stated that "a defendant who prevails against a claim of misappropriation made in bad faith may, at theconclusion of trial, move under said statute for an award of reasonable attorneys fees." (Emphasis added.) Clinipad Corp. v. Aplicare, Inc., CT Page 10269 Superior Court, judicial district of New Haven, Docket No. 235252 (May 21, 1991, Fracasse, J.) (4 Conn.L.Rptr. 88). The court agrees and finds that the underlying, CUTSA, misappropriation lawsuit must terminate in favor of the defendants before they can assert a claim under § 35-54. For these reasons, the second count of the counterclaim and its related claim for relief are stricken. See Pamela B. v. Ment, supra, 244 Conn. 325
("Practice Book . . . § 10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally awarded.")
 3.
The third count of the counterclaim sounds in abuse of process and realleges the facts of the first count. The most pertinent allegations are as follows: On November 15, 1999, based in whole or in part upon information contained in documents produced by Alliance on November 12, 1999, and in response to Classic's discovery requests in this lawsuit, a Classic employee called the Connecticut Department of Transportation (DOT) and asked the DOT to initiate an inquiry into whether Alliance had proper registrations and permits. By letter from Ronald Ventura to DOT, the plaintiffs requested that the DOT: (1) send a letter to Oyugi asking him to cease operating illegally and (2) contact Swiss Bank/UBS, a client of both parties, and inform the bank that Alliance was operating illegally. The plaintiffs attached to their letter eight pages of documents that Alliance had produced to the plaintiffs in response to Classic's discovery requests in this lawsuit. The plaintiffs have admitted during sworn deposition testimony that one of the reasons they asked the DOT to investigate Alliance was because Alliance had solicited business from the plaintiffs' customers.
The plaintiffs move to strike the third count of the counterclaim on the ground that it is legally insufficient because it fails to allege facts which would, if proven, support a cause of action for abuse of process. Specifically, the plaintiffs argue that the defendants fail to allege facts that show that the plaintiffs' primary purpose in the underlying litigation was to accomplish a purpose for which it was not designed. Furthermore, they argue that the facts that the defendants do allege do not implicate a misuse of the judicial process, but rather a misuse of the discovery process.
"[T]he Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed. . . . Comment b to § 682 explains that the addition of [the world primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the CT Page 10270 defendant." (Citations omitted; emphasis in original; internal quotation marks omitted.) Mozzochi v. Beck, 204 Conn. 490, 494, 529 A.2d 171
(1987). Therefore, a cause of action for abuse of process must "point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." Id., 497.
"[T]here is no bright line that clearly distinguishes between the ends ordinarily associated with litigation and the ulterior purpose that the tort of abuse of process is intended to sanction. Much turns on the specificity of the pleadings." Id., 496. "To state a claim for abuse of process, [the] judicial process must in some manner be involved." (Internal quotation marks omitted.) MacDonald v. Howard, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 176368 (October 17, 2000, Mintz, J.) (28 Conn.L.Rptr. 373), quoting, W. Prosser W. Keeton, Torts (5th Ed. 1984). The "[j]udicial process is defined as the process which is used to inform the defendant of the institution of proceedings against him and to compel his appearance, in either civil or criminal cases." Id., quoting, Black's Law Dictionary (6th Ed. 1990). An alleged abuse of the discovery process is not legally sufficient to support a cause of action sounding in an abuse of process. See Rehim v.Kimberly-Clark Corp, Superior Court, judicial district of Danbury, Docket No. 323416 (November 10, 1997, Stodolink, J.) (allegation that plaintiff used civil deposition for information to further criminal prosecution is insufficient to state abuse of process cause of action.)
The court concludes that the defendants' allegations merely amount to a claim that the plaintiffs improperly used the discovery process to identify procedural errors in Alliance's business practices. The allegations that the plaintiffs disclosed that information to government agencies and to customers of Alliance are not sufficient to support an abuse of process claim. See MacDonald v. Howard, supra,28 Conn.L.Rptr. 373
(motion to strike abuse of process count granted because judicial process not involved.) Therefore, these allegations do not support a conclusion that the plaintiffs filed this lawsuit primarily for a purpose for which it was not designed. For these reasons, the third count of the counterclaim is legally insufficient and is stricken.
 4.
In the fourth count of the counterclaim, for tortious interference with a business relationship, the defendants reallege the facts of the first count and also that: Ronald Ventura sent a letter that Carey had received from DOT to approximately fifty customers of Alliance, including companies the plaintiffs knew were doing business with Alliance. The letter suggested that Alliance did not have a livery permit at that time. The plaintiffs admitted during sworn deposition testimony that one CT Page 10271 of their motives in sending these letters was "to have customers be concerned about whether they should be doing business with Alliance." The plaintiffs have also admitted during sworn deposition testimony that Ronald Ventura told one or more of Alliance's customers that Oyugi and Alliance were operating illegally and that Alliance had been served with a cease and desist order. The defendants allege that such statements were false when made and that Alliance has suffered, and is continuing to suffer, injuries and damages for which the plaintiffs are liable.[14]
The plaintiffs move to strike this counterclaim on the ground that the defendants fail to allege facts essential to a claim for tortious interference with a business expectancy. The plaintiffs also argue that the defendants fail to allege facts showing that the plaintiffs had acted maliciously or that the defendants suffered actual loss as a result of such alleged interference.
The elements of a claim for tortious interference with a business relationship are: "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." Hi-HoTower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 27, 761 A.2d 1268
(2000). "Unlike other torts in which liability gives rise to nominal damages even in the absence of proof of actual loss . . . it is an essential element of the tort of unlawful interference with business relations that the plaintiff suffers actual loss." (Internal quotation marks omitted.) Appleton v. Board of Education of Stonington,254 Conn. 205, 213, 757 A.2d 1059 (2000).
The court agrees that the defendants fail to sufficiently plead actual loss due to the plaintiffs' alleged tortious interference with a business expectancy. Although the defendants allege that they have suffered and continue to suffer loss due to the plaintiffs' conduct, they fail to support their allegation with any facts, and thus their allegation amounts to a legal conclusion. See Faulkner v. United TechnologiesCorp., 240 Conn. 576, 588, 693 A.2d 293 (1997) ("A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings.") (Internal quotation marks omitted.) Therefore, the motion to strike the fourth count of the counterclaim is granted on this basis and the court need not analyze the plaintiffs' other arguments pertaining to this count.
 5.
The fifth count of the counterclaim, for libel per se, realleges the facts of the first count and also involves three statements alleged in CT Page 10272 the third and fourth counts of the counterclaim. The plaintiffs move to strike this count on the grounds that defendants have failed to allege facts which satisfy the essential elements of a libel per se claim. The plaintiffs also contend that this count does not arise out of the same transaction as plaintiffs' amended complaint and thus violates Practice Book § 10-10. As to the first ground, the plaintiffs argue, inter alia, that the defendants fail to allege facts that show that the plaintiffs had malice. The plaintiffs also argue that this count focuses on conduct by the plaintiffs that occurred after the conduct that forms the basis for the complaint.
"Libel is defamation[15] of a character usually consisting of the printed word." Miles v. Perry, 11 Conn. App. 584, 601 n. 11, 529 A.2d 199
(1987). "Libel per se . . . is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. . . . When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiffs reputation. He is required neither to plead nor to prove it." (Citation omitted; internal quotation marks omitted.) Lyons v. Nichols,63 Conn. App. 761, 767-8, 778 A.2d 246, cert. denied, 258 Conn. 906,782 A.2d 1244 (2001). "The statements contained therein, taking them in the sense in which common and reasonable minds would understand them, are determinative, and they may not for this purpose be varied or enlarged by innuendo." (Internal quotation marks omitted.) Battista v. UnitedIlluminating Co., 10 Conn. App. 486, 492, 523 A.2d 1356, cert. denied,204 Conn. 803, 525 A.2d 1352 (1987).
"Two of the general classes of libel which, it is generally recognized, are actionable per se are (1) libels charging crimes and (2) libels which injure a man in his profession and calling." (Citations omitted; internal quotation marks omitted.) Id. As to the second class of libel per se, it may be actionable if"it charges improper conduct or lack of skill or integrity in one's profession and is of such a nature that it is calculated to cause injury to one in his profession." (Internal quotation marks omitted.) Miles v. Perry, supra, 11 Conn. App. 601; see also Moriarty v. Lippe, 162 Conn. 371, 386, 294 A.2d 326 (1972).
First, the defendants allege that Ronald Ventura sent a letter that Carey received from DOT to approximately fifty customers of Alliance. The letter suggested that Alliance did not have a livery permit at that time. This statement does not meet the standard for libel per se because the defendants do not allege that it was false. For this reason, this statement does not satisfy the calculated to cause injury element of the first part of the libel per se test. See Saloomey v. A Child's Garden,Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 324092 (April 24, 1996, Levin, J.) (motion to strike libel per CT Page 10273 se count granted because plaintiff has failed to allege that the written words were false); see also Bahrenburg v. Mills, Superior Court, judicial district of Hartford, Docket No. 801630 (March 16, 2001, Wagner, J.) (false and malicious comments satisfy the calculated to cause injury element of the libel per se test); National Distributor Systems, Inc. v.Steinis, supra, Docket No. 415780 (same).
The defendants also rely on the plaintiffs' sworn admission that Ronald Ventura told one or more customers of Alliance that Oyugi and Alliance were operating illegally and that Alliance had been served with a cease and desist order. The defendants allege that such statements were false when made. However, because the statements were verbal and not written, the statements do not meet the standard for libel per se.
The third statement concerns the defendants' allegation that Ronald Ventura sent a letter to a Swiss Bank/UBS employee, who had responsibility for hiring limousine services, stating that the DOT had served with a cease and desist order on Alliance. This statement implies that the defendants lack skill and integrity in the limousine services profession. The statement is sufficiently specific to infer that the writer is referring to the defendants' professional practice or skills and does not require innuendo. See Battista v. United Illuminating Co., supra, 10 Conn. App. 492.
Moreover, the court also finds that the defendants sufficiently allege that this statement was calculated to cause injury for two reasons. First, the defendants allege that the statement is false. Second, the statement was malicious in that the plaintiffs were allegedly aware that Swiss Bank/UBS was a customer of Alliance. For these reasons, this court finds that the statements satisfy the libel per se test and therefore the fifth count of the counterclaim will not be stricken on this ground.
The plaintiff also moves to strike this count on the ground that it does not arise out of the same transaction that is the subject of the plaintiffs' amended complaint and this violates Practice Book §10-10.[16] "The transaction test is one of practicality, and the trial court's determination as to whether that test has been met ought not be disturbed except for an abuse of discretion. . . . Where the underlying purposes of Practice Book [10-10], to wit, judicial economy, avoidance of multiplicity of litigation, and avoidance of piecemeal disposition of what is essentially one action, are thwarted rather than served by the filing of a [counterclaim], the [counterclaim] may properly be expunged." (Internal quotation marks omitted.) Wallingford v. Glen ValleyAssociates, Inc., 190 Conn. 158, 161, 459 A.2d 525 (1983).
In the case at bar, the amended complaint relates to the business CT Page 10274 competition between Alliance and the plaintiffs. The court finds that the letter from Ronald Ventura to a Swiss Bank/UBS employee regarding Alliance's business integrity sufficiently arises out of the transaction of the amended complaint. To allow this counterclaim to remain in the present action would not thwart the purpose of Practice Book § 10-10. For these reasons, the plaintiffs' motion to strike the fifth count of the counterclaim is denied.
 6.
The plaintiffs also move to strike the defendants' second special defense, sounding in unclean hands (the unclean hands defense). A plaintiff can move to strike a special defense. Nowak v. Nowak,175 Conn. 112, 116, 394 A.2d 716 (1978). "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) Danbury v. DanaInvestment Corp., 249 Conn. 1, 17, 730 A.2d 1128 (1999); see also Practice Book § 10-50 ("[f]acts which are consistent with [the plaintiffs] statements [of fact] but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged"). "In . . . ruling on the . . . motion to strike [special defenses], the trial court . . . [must] take the facts to be those alleged in the special defenses and to construe the defenses in the manner most favorable to sustaining their legal sufficiency." Connecticut National Bank v. Douglas,221 Conn. 530, 536, 606 A.2d 684 (1992).
As a preliminary matter, the court recognizes that it is "well settled that equitable defenses or claims may be raised in an action at law" (Internal quotation marks omitted.) Masopust v. Citizens National Bank, Superior Court, judicial district of Windham at Putnam, Docket No. 062846 (March 8, 2001, Foley, J.), citing, Kerin v. Udolf, 165 Conn. 264, 269,334 A.2d 434 (1973); Perkins v. Gibson Financial, Superior Court, judicial district of Stamford/Norwalk at Stamford Docket No. 167156 (May 19, 2000, Mintz, J.) (special defense alleging unclean hands was proper in a breach of contract claim).
In their unclean hands defense, the defendants reallege the allegations of the first count of the counterclaim and add allegations, that the plaintiffs have unclean hands in that the plaintiffs commenced a baseless lawsuit in order to harm the defendants' business interests. The defendants also allege that the plaintiffs caused substantial monetary damage to those business interests, abused the discovery process in this lawsuit, made defamatory and otherwise improper statements about Alliance to its customers, and retained a private investigator in order to attempt to trap Alliance into violating regulations. CT Page 10275
The plaintiffs move to strike this defense on the following three grounds: the defense is based on the theory of a vexatious litigation and cannot be litigated until and unless the defendants prevail in this lawsuit; the defense is barred by the Noerr-Pennington doctrine; the defense does not arise out of the same transaction as their complaint and thus violates Practice Book § 10-10. In response, the defendants maintain that this special defense is not based on a vexatious litigation but rather on their allegations regarding the plaintiffs' sham litigation, abuse of process, libel per se and tortious interference with a business expectancy. For the reasons that follow, the motion to strike the unclean hands defense is denied.
In Thompson v. Orcutt, 257 Conn. 301, 310, 777 A.2d 670 (2001), the Supreme Court of Connecticut explained that: "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice. . . . The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiffs conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Citations omitted; internal quotation marks omitted.)
The matter in litigation in this case involves the business competition of the parties. As to the plaintiffs' first ground for striking this defense they are correct in stating that a vexatious litigation action cannot be commenced unless and until the defendants' underlying action terminates in the defendants' favor. The defendants' unclean hands defense is not, however, solely based on their allegations that the plaintiffs' lawsuit is vexatious. It is also based on their allegations that pertain to the defendants' counterclaims for CUTPA and a sham litigation. A party asserting a claim for sham litigation is not required to allege the underlying action terminated in its favor.
As far as the plaintiffs' assertion that the Noerr-Pennington doctrine shields them from an unclean hands defense is concerned, the court has already determined that the defendants have sufficiently pleaded that the plaintiffs violated CUTPA by filing a sham action. It is therefore apparent that the defendants adequately allege a claim for sham litigation and the court cannot strike their unclean hands defense on this ground. CT Page 10276
As to the defendants third ground, Practice Book § 10-10 does not mandate that special defenses must arise out of the same transaction as the complaint. For this reason, this is not a valid ground for striking the unclean hands defense. Accordingly, the plaintiffs' motion to strike the unclean hands defense is denied.
In summary, the defendant's motion for summary judgment is denied; the plantiffs motion to strike the defendant's second special defense is denied; its motion to strike the first and fifth counts of the defendant's counterclaim and the corresponding claims for relief is denied, and its motion to strike the second, third, fourth and sixth counts of the defendant's counterclaim and the corresponding claims for relief is granted.
So Ordered.
D'ANDREA, J.T.R.